Matthew A. Steward (#7637)
mas@clydesnow.com
Brian C. Webber (#8018)
bcw@clydesnow.com
Timothy R. Pack (#12193)
trp@clydesnow.com
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
Facsimile (801) 521-6280

*Attorneys for Plaintiff Vivint, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | | |
|---|---|---|
| VIVINT, INC., a Utah corporation | : | **MEMORANDUM IN OPPOSITION TO** |
| | : | **ALARM PROTECTION'S RULE 12(b)(6)** |
| Plaintiff, | : | **MOTION TO DISMISS VIVINT'S** |
| | : | **THIRD AND SEVENTH CAUSES OF** |
| v. | : | **ACTION** |
| | : | |
| ALARM PROTECTION, LLC, a Utah | : | |
| limited liability company; ALARM | : | |
| PROTECTION ALABAMA, LLC, a Utah | : | Case No. 2:14-cv-00441-BCW |
| limited liability company; ALARM | : | |
| PROTECTION ALASKA, LLC, a Utah | : | |
| limited liability company; ALARM | : | Magistrate Judge Brooke C. Wells |
| PROTECTION ARKANSAS, LLC, a Utah | : | |
| limited liability company; ALARM | : | |
| PROTECTION CALIFORNIA, LLC, a | : | |
| Utah limited liability company; ALARM | : | |
| PROTECTION FLORIDA, LLC, a Utah | : | |
| limited liability company; ALARM | : | |
| PROTECTION KENTUCKY, LLC, a Utah | : | |
| limited liability company; ALARM | : | |

| | |
|---|---|
| PROTECTION MISSISSIPPI, LLC, a Utah limited liability company; ALARM PROTECTION TENNESSEE, LLC, a Utah limited liability company; ALARM PROTECTION TEXAS, LLC, a Utah limited liability company; ALARM PROTECTION UTAH, LLC, a Utah limited liability company; ADAM SCHANZ, an individual; and Does 1-10. | : : : : : : : : : |
| Defendants. | : |

Pursuant to DUCivR 7-1(b), Plaintiff Vivint, Inc. ("Vivint") submits its Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss Vivint's Third and Seventh Causes of Action.

## **INTRODUCTION**

Vivint is a provider of electronic security and home automation products and services to customers throughout the United States, Canada and New Zealand.  Alarm Protection, LLC, its principal Adam Schanz, and the remaining defendants (collectively "Alarm Protection") have engaged in a campaign to take over Vivint's customers through the use of deceptive and misleading sales practices.  Alarm Protection utilizes a variety of misrepresentations to confuse and mislead Vivint's customers such as:

- "Vivint has gone out of business;"

- "Alarm Protection bought out Vivint;" or

- "Vivint is a scam and/or a fraud."

(Complaint at ¶ 30.).  These types of deliberate misrepresentation violate the Utah Truth in Advertising Act (the "TAA").

Contrary to Alarm Protection's suggestion, deceptive trade practices that occur outside the borders of Utah violate the TAA.  Specifically, Section 13-11a-4(1) of the TAA does not limit the Court's jurisdiction to acts that occur in Utah.  Instead, the TAA explicitly states that it applies "to any claim arising from a deceptive trade practice as defined in this chapter," regardless of location.  In any event, **Alarm Protection**'s deceptive conduct in this case originated *in* Utah because Alarm Protection sales representatives are trained in Utah to make false and misleading statements to potential customers. (Compl. ¶¶ 31-34).

**Alarm Protection** also erroneously claims that under the TAA's definition of "Advertisement" its in-person oral misrepresentations do not violate the TAA.  Alarm Protection is once again mistaken.  First, the term "Advertisement" is used sparingly throughout the TAA.  For example, the TAA lists twenty (20) prohibited deceptive trade practices, only five of which contain the defined term "Advertisement."  If the Utah legislature intended to apply the definition of "Advertisement" to all deceptive practices, it would not have conspicuously excluded the definition from the remaining fifteen deceptive trade practices listed in TAA.  Moreover, if the Legislature intended to exempt in person oral representations from the reach of the TAA, it would have specifically exempted such conduct in the "Exemptions" section of the TAA. *See* Utah Code Ann. § 13-11a-5.

Finally, the stated purpose of the TAA is to prevent three types of practices: (1) "deceptive . . . practices;" (2) "misleading . . . practices;" and (3) "false advertising practices." Utah Code Ann. § 13-11a-1.  The plain language of the TAA does not require that defendant engage in only "false advertising practices" to state a claim.  Instead, a plaintiff may allege that a

defendant engaged in any one of the three prohibited practices.  For these reasons, Alarm

Protection's motion to dismiss must be denied.

<u>ARGUMENT</u>

**I.      ALARM PROTECTION'S MISREPRESENTATIONS ORIGINATED IN UTAH.**

**A.      Alarm Protection Misstate the TAA's Jurisdiction Statement.**

In its attempt to persuade the Court that the TAA only applies to deceptive trade practices

that occur within the boundaries of Utah, Alarm Protection misquoted the TAA's jurisdiction

statement set forth in Section 13-11a-4(1).  Alarm Protection states:

> The drafters of the Act, in giving jurisdiction to Utah state courts, expressly
> limited the jurisdiction to acts that occurred in Utah: 'The district courts of this
> state have jurisdiction over any supplier as to any act or practice in this state
> governed by this chapter.'

(Dkt. No. 4 at 5).  However, the complete and accurate quote provides a substantially different

picture:

> The district courts of this state have jurisdiction over any supplier [1] as to any act
> or practice in this state governed by this chapter **or** [2] **as to any claim arising
> from a deceptive trade practice as defined in this chapter**.

Utah Code Ann. § 13-11a-4(1) (emphasis added).  This omission is material because the plain

language of the TAA clearly states that a Court has jurisdiction when an act governed by Chapter

11a occurs in Utah **OR** when a deceptive trade practice is committed, regardless of location.

This construction is also consistent with the TAA's overall broad purpose to prevent deceptive

trade practices in all their forms.  *See id*. at § 13-11a-1.  Accordingly, the plain language of the

statute does not require that a violation occur within the borders of Utah.

**B.     Alarm Protection's Misrepresentations Are Connected to Utah.**

Although Alarm Protection's deceptive practices ultimately reach Vivint customers outside of Utah, those deceptive trade practices originate *in* Utah.  First, the Alarm Protection Defendants are all Utah entities and Defendant Adam Schanz, the principal of these entities, is a Utah resident. (Complaint at ¶¶ 2-5.)  Second, the Complaint alleges that Alarm Protection, led by Schanz, have trained their sales representatives to make misleading and dishonest representations to potential customers:

> 31.     Some or all of the aforementioned examples of the deceptive, dishonest, tortious, untrue and illegal sales practices of AP and its Sales Representatives were at the direction of the AP Defendants and Schanz.

> 32.     Defendants have trained their Sales Representatives to utilize false and deceptive sales practices in order to cause Vivint customers to switch to AP under false pretenses.

> 33.     Defendants have not only condoned, but have actually encouraged and trained these reprehensible practices by AP Sales Representatives.

> 34.     Stealing Vivint customers was a subject of bragging and competition amongst AP and its Sales Representatives.

(Complaint at ¶¶ 31-34.)

Alarm Protection's deceptive tactics are developed in Utah, taught in Utah, practiced in Utah, and condoned by Utah entities and individuals.  Accordingly, because Alarm Protection's violations of the TAA originated in Utah, the Court has jurisdiction over the Defendants.

In addition, because the Alarm Protection Defendants are entities registered to do business in Utah,  minimum contacts exist to easily bring these Defendants within the Court's jurisdiction. *See Alphagen Biotech v. Langoost Enterprises, LLC*, 2:13-CV-15 TS, 2013 WL

2389792 (D. Utah May 30, 2013), appeal dismissed (Oct. 1, 2013) (unpublished) (discussing

minimum contacts under general and specific jurisdiction analyses.)

Finally, cases from this Court addressing the TAA have never held that a violation of the

TAA must occur within the borders of Utah.  For example, in *Klein-Becker USA, LLC v. Englert,*

*2:06-CV-378 TS, 2011 WL 147893 (D. Utah Jan. 18, 2011)* (unpublished) *aff'd,* 711 F.3d 1153

(10th Cir. 2013), the defendants obtained product stolen from plaintiff and resold the product

through the internet and misled consumers by posing as GNC, a well-known health supplement

retailer. *Id.*  Although the defendant violated the TAA, the Court never found that a

misrepresentation specifically occurred within the borders of Utah.

In *Klein-Becker USA, LLC v. Home Shopping Network, Inc., a Delaware corporation,*

*2:05-CV-00200 PGC, 2005 WL 2265007 (D. Utah Aug. 31, 2005),* the plaintiff alleged that the

defendant made false and misleading statements about plaintiff's products on the internet and on

television.  Although the Court's TAA analysis focused on whether a claim for damages under

the TAA could proceed without statutory notice, the Court never found that a consumer located

in Utah viewed the television program or webpages containing the alleged false and misleading

statements. *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1553-54 (D. Utah 1996) (no

finding that any alleged violation of the TAA occurred within the borders of Utah).

Both *Klein-Becker* cases discussed above involve alleged misrepresentations

indiscriminately directed to individuals presumably located across the country, not just in Utah.

Moreover, none of the cases specifically found that one Utah consumer was exposed to the

wrongful conduct.  Therefore, given the plain language of the TAA and the supporting case law,

and the fact that Alarm Protection's violations of the TAA originated in Utah, Vivint's TAA

claim is sufficiently pled to confer jurisdiction on this Court.

II.     **THE TAA IS CONSTRUED BROADLY TO PREVENT (1) DECEPTIVE PRACTICES; (2) MISLEADING PRACTICES; AND (3) FALSE ADVERTISING PRACTICES.**

Alarm Protection has misread the plain language and the purpose of the TAA.  They have

construed the TAA narrowly and contend that a defendant must be engaging in "advertising"

before the TAA can apply.  Alarm Protection is wrong.

When interpreting a Utah statute, the Court's primary task is "to evince the true intent

and purpose of the Legislature." *Fuenmayor v. United States*, 626 F. Supp. 2d 1222, 1223-24 (D.

Utah 2009) (quoting *Li v. Enter. Rent-A-Car Co. of Utah*, 2006 UT 80, ¶ 9.)  First, the Court

looks "to the statute's plain language, and giv[ing] effect to the plain language unless the

language is ambiguous." *Id.*   "In so doing, they read the plain language of the statute as a whole,

and interpret its provisions in harmony with other statutes in the same chapter and related

chapters." *Id.*  Next, Courts "presume that the legislature used each word in a statute advisedly

and [the courts] give effect to each term according to its ordinary and accepted meaning." Id.

Finally, "[w]hen legislation is clear, Utah courts refuse to consider public policy arguments or

otherwise attempt to assess the wisdom of the legislation. [Their] duty is to implement the law as

it reads unless it results in an absurd outcome." *Id.* (quoting *Stephens v. Bonneville Travel, Inc.*,

935 P.2d 518, 522 (Utah 1997)).

**A.      Section 13-11a-1 of the TAA Does Not Limit the Reach of the TAA to Advertising Activities.**

Contrary to Alarm Protection's suggestion, the plain language of the TAA is not narrowly limited to "advertising" activities, but is construed broadly.  Pursuant to Utah Code Ann. § 13-11a-1, the stated purpose of the TAA is to prevent three types of practices: (1) "deceptive . . . practices;" (2) "misleading . . . practices;" and (3) "false advertising practices."  Accordingly, the plain language of the TAA does not require that a defendant engage in only "false advertising practices" to state a claim.  Instead, in order to state a claim under the TAA, a plaintiff may allege that a defendant engaged in any one of the three prohibited practices set forth in Utah Code Ann. § 13-11a-1.

**B.      Section 13-11a-3 of the TAA Does Not Limit the Reach of the TAA to Advertising Activities.**

If the Utah Legislature had intended to restrict the scope of the TAA to "advertising" activities only, it would not have distinguished between "advertising" and other types of deceptive trade practices.  Section § 13-11a-3 of the TAA enumerates twenty (20) specific types of "deceptive sales practices" that violate the Act.  That Section specifically distinguishes acts that involve advertising and acts that do not.  For example,

> Deceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person:
>
> (a) passes off goods or services as those of another;
>
> (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; . . .

(i) <u>advertises</u> goods or services or the price of goods and services with intent not to sell them as <u>advertised</u>;

(j) <u>advertises</u> goods or services with intent not to supply a reasonable expectable public demand, . . .

(n) <u>advertises</u> or uses in a price assessment or comparison a price that is not that person's own . . .

(t) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. . . .

Utah Code Ann. § 13-11a-3 (emphasis added).

According to its plain language, the TAA has broadly defined "deceptive trade practices" to include activities that involve advertising and activities that do not. Indeed, the catchall provision in Section 13-11a-3(1)(t) is very broad as it includes <u>all</u> trade practices that create a likelihood of confusion or misunderstanding. Accordingly, the scope of the TAA is broad and expressly includes all business practices which are deceptive and misleading.

**C.    Section 13-11a-4 of the TAA Does Not Limit the Reach of the TAA to Advertising Activities.**

The penalty provisions of the TAA specially punish "deceptive trade practices" and do not specifically punish "false advertising." Section 13-11a-4(1) of the TAA provides that "[t]he district courts of this state have jurisdiction over any supplier as to any act or practice in this state governed by this chapter **or** as to any claim arising from a **<u>deceptive trade practice</u>** as defined in this chapter." *Id.* (emphasis added). This provision expressly trumps any statement of purpose and directs courts to apply the TAA if any "deceptive trade practice" occurs. In other words,

Section 13-11a-4(1) expands the scope of the TAA to specifically include all "deceptive trade practices" defined by Section 13-11a-3(1).  Accordingly, the intent of the TAA is clear: the TAA is to be construed broadly to include all deceptive trade practices.

> **D.** **Sections 13-11a-2 and 5 of the TAA Do Not Limit the Reach of the TAA to Advertising Activities.**

Alarm Protection also directs the Court to the definition of "Advertisement" set forth in Utah Code Ann. § 13-11a-2(1).  Alarm Protection believes that because "Advertisement" "does not include any oral, in person, representation made by a sales representative to a prospective purchaser," Vivint cannot state a claim.  Alarm Protection is mistaken.

First, if the drafters of the TAA intended to exclude in person oral misrepresentations from the TAA's reach, then they would have explicitly exempted such misrepresentations in the TAA's "Exemption" section.  Section 13-11a-5, titled "Exemptions," specifically lists certain categories of behavior and businesses that are exempted from the TAA. Utah Code Ann. § 13-11a-5.  A review of this provision demonstrates that the Utah Legislature did not exempt individuals who make oral in person misrepresentations from the penalties of the TAA.

Second, other than the "definitions" section of the TAA, the defined term "Advertisement" only appears in Section 13-11a-3 in connection with five of the enumerated deceptive trade practices. *See* Utah Code Ann. § 13-11a-3(j), (k) (m), (p) and (s).  If the definition of "Advertisement" was intended to be applied to each and every enumerated deceptive trade practice, the Utah Legislature would have included the term in each of the twenty

listed deceptive trade practices.  Instead, the term "Advertisement" in conspicuously absent from the remaining <u>fifteen</u> deceptive trade practices listed in <u>Section 13-11a-3</u>.

     **E.**     **The Specifically Enumerated "Deceptive Trade Practices" Trump the General Terms of the TAA.**

Under Utah law, "where two statutes treat the same subject matter, and one statute is general while the other is specific, the specific provision controls." *J.J.W. v. State, Div. of Child & Family Servs.*, 2001 UT App 271, ¶ 15.  In this case, Section 13-11a-1 of the TAA contains a broad and general purpose statement prohibiting "deceptive . . . practices;" (2) "misleading . . . practices;" and (3) "false advertising practices."  Another statute, Section 13-11a-3 of the TAA, clarifies this purpose statement and specifically defines twenty (20) prohibited "Deceptive trade practices."  As discussed above, certain deceptive trade practices involve the act of advertising and others do not.  For example, the TAA can be violated when an Alarm Protection sales representative merely misrepresents his affiliation with Vivint.  *See* <u>Utah Code Ann. § 13-11a-3(1)(c)</u>.

Alarm Protection attempts to persuade the Court to ignore this well-establish rule of statutory interpretation by citing to *Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622 (D. Utah 1998).  However, the Court should consider *Procter* with caution as it does not rely on Utah law to interpret the TAA or Utah statutes.  *Procter* begins by agreeing that the "particularized description of the conduct prohibited by the [TAA] . . . would usually trump the more general language contained in the [TAA's] statement of purpose." *Procter*, 179 F.R.D. at 635.  However, *Proctor's* reasoning falters when it states that the purpose of the TAA is "narrow" and

that it "effectively imposes an overarching requirement that otherwise actionable conduct constitute advertising." *Id.*  As discussed above, the TAA is not to be construed narrowly.  In fact, when each provision of the TAA is read together, and not in isolation, it is evident that the Utah Legislature has given courts a clear mandate to be inclusive rather than exclusive, to prevent deceptive conduct in all its forms, and not limit the scope and reach of the TAA to activities that fall within the narrow definition of "Advertisement."  In fact, the TAA is the only Utah statute that exists to protect companies like Vivint from competitors who use lies and deception to steal business.  It is therefore logical to interpret the TAA broadly in order to prevent deceptive trade practices in <u>all</u> their forms.  Accordingly, *Proctor* is not controlling law and its faulty reasoning should not be followed.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court should deny Alarm Protection's Motion to Dismiss Vivint's TAA claim.  Vivint does not oppose dismissal of its Civil Conspiracy claim.

DATED this 18th day of July, 2014.

CLYDE SNOW & SESSIONS


/s/ Timothy R. Pack
Matthew A. Steward
Brian C. Webber
Timothy R. Pack
*Attorneys for Plaintiff Vivint, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July 2014, I caused a true and correct copy of the

foregoing document to be sent to the following by email as follows:

Erik Olson                                                                      via ECF Notification
Jason Hull
MARSHALL OLSON & HULL
Ten Exchange Place, Suite 350
Salt Lake City, UT  84111
eolson@mohtrial.com
jhull@mohtrial.com
*Attorneys for Defendants*